**United States District Court**
For the Northern District of California

**\*E-Filed 06/30/2010\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

STEVEN G. LEE,

    Plaintiff,

  v.

U.S. BANK, et al.,

    Defendants.
_____/

No. C 10-1434 RS

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

## I.   INTRODUCTION

Plaintiff Steven Lee seeks to halt a pending foreclosure sale of his home by the defendant lenders and loan servicers. He chiefly argues he rescinded the loan obligation pursuant to a right provided under the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.* Lee also relies on state statutory and common law to allege violations relating to loan consummation and foreclosure and seeks rescission and other relief. Defendants U.S. Bank and DSL Service Company (who, respectively, functioned as lender and servicer) move to dismiss all allegations for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Defendants' motion to

---

[1] Defendants move, in the alternative, for a more definite statement under Federal Rule of Civil Procedure 12(e) in the event the Court denies their motion to dismiss. Because this Order substantially grants defendants' motion to dismiss, the motion for a more definite statement is moot.

dismiss Lee's claims for rescission under TILA or California Civil Code section 1691, for injunctive relief, to quiet title, and for declaratory relief must be denied.  In contrast, their motion to dismiss Lee's UCL allegations, his wrongful foreclosure claim, all claims premised on fraud, unjust enrichment and an accounting are granted.  With the exception of his UCL claim, Lee may amend his Complaint.

## II.  RELEVANT FACTS

The property at the heart of the parties' dispute is located at 21 Parkgrove Drive in South San Francisco, California.  In February of 2007, Lee refinanced an existing loan on the property and, to do so, engaged Downey Savings and Loan Association as a lender.  Downey Savings was later acquired by U.S. Bank and the Order refers to the latter entity as the "lender."  The principal amount financed was $875,000.  Lee avers he signed a deed of trust on February 8, 2007; the deed was recorded on February 14, 2007.  DSL operated as the loan's servicer and collected monthly payments from Lee until the late winter of 2008 when Lee fell behind on his monthly payments.  Lee unsuccessfully sought a modification of the loan's terms.  Lee avers that "defendants" recorded a notice of default on August 4, 2009, and a notice of trustee's sale on November 10, 2009.  Lee argues the latter document does not provide the correct address for U.S. Bank as, Lee contends, is required by California Civil Code section 2924f.

In February of 2009, Lee explains he engaged the services of a forensic accountant.  He notes how the accountant unearthed various TILA violations from the face of Lee's disclosure forms.  Specifically, Lee discovered that U.S. Bank apparently overstated a finance charge by $518.94 and misstated the loan's annual percentage rate.  He points out that a notice of his right to cancel misstated the signature date by one day and, accordingly, reflected the wrong statutory cancellation cutoff date.  Finally, Lee posits that he never received certain other initial disclosures required under that Act.  Lee represents that he notified U.S. Bank in writing, via certified mail, of his decision to exercise the rescission right contemplated by TILA and California state law on February 10, 2010.  In that notice and also in his Complaint, Lee averred that he was willing and able to tender.  Defendants counter that Lee has not, but must, *prove* a present ability to tender to

survive their motion. They ask this Court to infer from his inability to meet his monthly mortgage obligation that he cannot presently provide such proof.

Lee also broadly attacks the propriety of the loan itself. He contends defendants improperly encouraged him to enter into a loan he could not afford and, more specifically, that they with reasonable diligence could have recognized this fact. Defendants deny any obligation to protect Lee from an ill-conceived bargain.

### III.     LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court accepts a plaintiff's factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Dismissal is appropriate where a complaint lacks "a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) (citation omitted). In the context of a Rule 12(b)(6) motion, a district court generally may not consider material beyond the pleadings. *Fort Vancouver Plywood Co. v. United States*, 747 F.2d 547, 552 (9th Cir. 1984). The exception is material that is properly submitted as part of the complaint. *Amfac Mtg. Corp. v. Arizona Mall of Tempe*, 583 F.2d 426, 429-30 (9th Cir. 1978).

Rule 8(a)(2) of the Federal Rules of Civil Procedure demands that a pleading include a "short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has instructed that this mandate does not require "detailed factual allegations," but does "demand[] more than an unadorned, the-defendant-harmed-me accusation" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Federal Rule of Civil Procedure 9(b) provides that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct.

*Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). In other words, "the circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003). By contrast, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Federal Rule of Civil Procedure 15(a) instructs that leave to amend an order of dismissal "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). That said, a Court may foreclose amendment where it would be futile or subject to dismissal. *See Gadda v. State Bar of California*, 511 F.3d 933, 939 (9th Cir. 2007).

## IV.   DISCUSSION

### A.   The TILA Claim

Defendants move to dismiss Lee's TILA claims for rescission and statutory damages under a theory that both are time-barred. In the alternative, defendants contend Lee's rescission claim cannot survive a motion to dismiss where he has not adequately tendered or provided extrinsic evidence of his ability to do so.

Congress enacted TILA to promote the "informed use of credit" by consumers. 15 U.S.C. § 1601(a); *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 235 (2004). "TILA's disclosure provisions seek to ensure meaningful disclosure of credit terms." *Household Credit*, 541 U.S. at 235 (citations and internal quotation marks omitted). To this end, "the Act requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). Federal Regulation Z, 12 C.F.R. 226, *et seq.*, details the information creditors must disclose as well as the timing therein (where, depending on the transaction, consumers might benefit not merely from initial but also periodic disclosures).

No. C 10-1434 RS
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

4

Failure to comply with the Act subjects a lender to criminal penalties for noncompliance, *see* § 1611, as well as to statutory and actual damages, *see* § 1640. An action for damages "may be brought" within one year after a violation of the Act. § 1640(e); *Ocwen*, 523 U.S. at 412. A TILA violation occurs on "the date of consummation of the transaction," *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986), and "consummation" means "the time that a consumer becomes contractually obligated on a credit transaction," 12 C.F.R. § 226(a)(13). TILA also authorizes a borrower whose loan is secured with his or her "principal dwelling," to rescind the loan entirely "until midnight of the third business day following the consummation of the transaction . . . ." § 1635(a). Where the creditor fails to make requisite disclosures, the borrower is not "liable for any finance or other charge, and any security interest given by [him], including any such interest arising by operation of law, becomes void" upon rescission. § 1635(b). The borrower's right of rescission "expire[s] three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." § 1635(f). Section 1635(a) states that "the obligor shall have the right to rescind the transaction . . . by notifying the creditor . . . of his intention to do so." The accompanying regulation further provides that "[t]o exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is given when mailed . . . ." 12 C.F.R. 226.23(a)(2).

    i.   Statute of Limitations

Lee seeks to enforce rescission of the loan transaction under section 1635(f) and pursue statutory damages as provided for in section 1640. Specifically, Lee suggests he did not receive the "initial" disclosures required under the Act. He refers to disclosures that must accompany certain loan applications. *Compare* § 1638(b) (discussing disclosures that accompany loan application) *with* § 1638(b)(2)(B)(iii) (discussing final disclosures that accompany *consummation* of loan). As to the "final" disclosures he acknowledges he did receive, Lee contends that they reflect inaccurate dates and significantly overstate the finance charge contemplated in section 1638(a)(3). Defendants insist that, even assuming these disclosure failures occurred, Lee's claims are time-barred. The parties agree loan consummation occurred on February 14, 2007. Lee sent his notice of rescission

to U.S. Bank on February 5, 2010 but filed the instant Complaint on February 18, 2010.  That is, he insists he effectively *exercised* his recessionary right within the three-year statutory period but filed his claim outside of it.  Relying on the plain language of sections 1635(a) and (f) as well as a Supreme Court opinion that interprets these provisions, Lee contends he is required only to rescind within the statutory period.  Further, he insists "rescission" entails notice in writing to the defendants.  Defendants respond that the relevant date is the filing of a legal claim.

The Ninth Circuit reads section 1635(f) as a "statute of repose" with jurisdictional implications.  It has held that a party's failure properly to rescind within the three-year period strips a federal court of subject matter jurisdiction.  *See Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002); *contra Doss v. Clearwater Title Co.*, 551 F.3d 634, 638-39 (7th Cir. 2008) ("In our view, there is nothing jurisdictional about [section] 1635(f)'s period of repose . . . . It is merely a precondition to a substantive right to relief.").  What is admittedly not obvious from caselaw in this Circuit is whether the three-year period attaches to the exercise of the recessionary right or to the filing of a legal claim.  Defendants rely on broad language in *Miguel* to argue a party must *file* a legal claim within the period.  Lee suggests the plain language of the section, the Supreme Court's interpretation thereof in *Beach v. Ocwen Federal Bank* and a narrow analysis of what was actually determined in *Miguel* demonstrate that this is wrong.

In *Ocwen*, the Court concluded that section 1635(f) is indeed a statute of repose and noted that the subsection "says nothing in terms of bringing an action but instead provides that the 'right of rescission under the Act shall expire' at the end of the time period." *Ocwen*, 523 U.S. at 417.  As described above, section 1635 requires that a consumer notify the creditor in accordance with the relevant regulation to exercise the right.  This regulation in turn demands only that the consumer do so in writing.  The regulation does not mention filing a suit in federal court.  In fact, under the statute, the creditor has twenty days to respond to a notice of rescission.  15 U.S.C. § 1635(b).  Typically, a borrower would need to file suit in federal court only to enforce this failure to respond.  In *Miguel*, however, the Ninth Circuit did state that "section 1635(f) represents an 'absolute limitation on rescission actions' which bars any *claims* filed more than three years after the

No. C 10-1434 RS
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

6

1  consummation of the transaction." *Miguel*, 309 F.3d at 1164-65 (emphasis added).  Accordingly,
2  several district courts have relied on this language to find jurisdiction lacking where lenders failed to
3  file claims within the statutory period.  *See, e.g.*, *Ramos v. Citimortgage, Inc.*, 2009 WL 86744, No.
4  08-02250, at *3 (E.D. Cal. Jan 8, 2009); *Caligiuri v. Columbia River Bank Mortg. Group*, 2007 WL
5  1560623, No. 07-3003, at *5 (D. Or. May 22, 2007).

6        A careful reading of *Miguel*, however, suggests that it should not be read so broadly.
7  There, the plaintiffs provided written notice of rescission to a party they mistook as the creditor
8  twenty-five days prior to the end of the limitations period.  Plaintiffs filed suit against this same
9  party on the last day of the period.  When they realized their error, they sought to amend their
10  complaint to add the true creditor.  Accordingly, the plaintiffs had neither provided notice of
11  rescission to, nor filed a complaint against, the correct party within the three year period.  Beyond
12  the sentence quoted above on which defendants rely, the Court's language supports the notion that
13  the *exercise* of rescission is determinative.  For example, the Court stated that "the issue is whether
14  [plaintiff's] cancellation was effective even though it was not received by the Bank—the creditor—
15  within the three-year statute of repose." 309 F.3d at 1165.  Because the Ninth Circuit in *Miguel* did
16  not therefore actually decide that a federal court lacks subject matter jurisdiction over a plaintiff
17  who rescinds within the period but files his claim outside of it, the plain language of the statute and
18  the guidance provided in *Ocwen* suggest the proper approach.  *See Santos v. Countrywide Home*
19  *Loans*, 2009 WL 2500710, No. 09-00912, at *5 (E.D. Cal. Aug. 14, 2009) (finding that *Miguel* does
20  not control the question of whether federal court has jurisdiction over plaintiff who properly
21  rescinds but fails to file within the three-year period).

22        Together, the statute's language and *Ocwen* suggest a lender must exercise his or her
23  rescissionary right within the three-year period.  *See, e.g.*, *Johnson v. Mortg. Elec. Registration Sys.,*
24  *Inc.*, 252 Fed. Appx. 293, 294 (11th Cir. 2007) ("A borrower can trigger rescission solely by
25  notifying the creditor within set time limits of [his or her] intent to rescind.") (internal quotation
26  marks omitted); *In re Hunter*, 400 B.R. 641, 661-62 (Bankr. N.D. Ill. 2009) ("[W]here the consumer
27  timely elected to rescind the loan, [section] 1635(f) is not a limitation on the filing of a suit to

28        No. C 10-1434 RS
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

1 enforce that right . . . ."); *Johnson v. Long Beach Mortg. Loan Trust 2001-4, et al.*, 451 F. Supp. 2d
2 16, 40-41 (D.D.C. 2006) (holding rescission claim was not time-barred where plaintiff gave timely
3 written notice but did not file suit within the limitations period). Lee has done so and his rescission
4 claim is therefore not time-barred.

5 As to Lee's damages claim, the one-year limitations period has lapsed. In his Complaint,
6 however, he at least declares that equitable tolling is appropriate. The Ninth Circuit has noted that
7 equitable tolling may be available where a plaintiff seeks statutory damages under section 1640.
8 *King v. California*, 784 F.2d 910, 913 (9th Cir. 1986). Moreover, a district court may grant a
9 motion to dismiss on statute of limitations grounds "only if the assertions of the complaint, read
10 with the required liberality, would not permit the plaintiff to prove that the statute was tolled."
11 *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000) (*quoting Tworivers v. Lewis*,
12 174 F.3d 987, 991 (9th Cir. 1999)). "Equitable tolling may be applied if, despite all due diligence, a
13 plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v.*
14 *Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000); *Leong v. Potter*, 347 F.3d 1117, 1123 (9th Cir.
15 2003) (noting that the doctrine "focuses on a plaintiff's excusable ignorance and lack of prejudice to
16 the defendant"). Moreover, "the applicability of equitable tolling depends on matters outside the
17 pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss (where review is
18 limited to the complaint) if equitable tolling is at issue." *Huynh v. Fidelity Fed. Bank*, 465 F.3d 992,
19 79, 1003-04 (9th Cir. 1996) (*citing Supermail v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995)).

20 Lee claims he first discovered the disclosure failures during this calendar year and only as a
21 result of a forensic audit. While he suggests it was not likely or even possible to discover these
22 failures prior to that date, defendants point out that at least some of the apparent problems Lee cites
23 (misstated charges and dates) were obvious from the face of the documents. It is also not clear why
24 Lee could not have pursued a forensic audit within the statutory period. Accordingly, while Lee
25 concludes that equitable tolling is appropriate, he does not actually supply any facts to support this
26 notion. Defendants' motion must therefore be granted. Lee may amend his Complaint to the extent
27 that he can advance a basis to invoke equitable tolling.

28

No. C 10-1434 RS
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

ii. <u>Ability to Tender</u>

Finally, defendants argue that even if Lee's claims are not time-barred, he must allege that he has tendered or prove a present ability to tender to proceed with his rescission claim. According to defendants, Lee's failure to pay his monthly mortgage payment severely undermines the plausibility of his claim that he can and will tender. This Court has held, in contrast, that a borrower need *not* allege present ability to tender to survive a creditor's motion to dismiss. *See, e.g.*, *Botelho v. U.S. Bank*, No. 08-04316, 2010 WL 583954, at *5 (N.D. Cal. Feb. 16, 2010). The rationale behind this approach proceeds directly from the Ninth Circuit's stance in *Yamamoto v. Bank of New York*. There, the Ninth Circuit explained that a district court may alter the rescission procedures described in TILA and retains "discretion to condition rescission on tender by the borrower of the property he had received from the lender." 329 F.3d 1167, 1171 (9th Cir. 2003) (internal quotation marks and citation omitted). Whether rescission should be so conditioned "depends upon the equities present in a particular case, as well as consideration of the legislative policy of full disclosure that underlies the Truth in Lending Act and the remedial-penal nature of the private enforcement provisions of the Act." *Id.* (internal quotation marks and citation omitted). Such an approach by its terms contemplates reaching the ability to tender question at a juncture other than at the pleading stage. The issue is moot, though, as Lee *has* averred his ability to tender. It is certainly enough to survive defendants' motion to dismiss.

B. <u>State Rescission</u>

U.S. Bank also moves to dismiss Lee's fourth claim for relief to rescind the loan under state law. Specifically, Lee relies on California Civil Code sections 1989(b)(1), (5) and (6) as well as 1691. Section 1989(b), respectively, allows a party to a contract to rescind where: (1) consent was obtained by mistake, through duress, menace, fraud, or undue influence exercised by or with the connivance of the adverse party; (5) where the contract is "unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault"; or (6) where the public interest will be prejudiced by permitting the contract to stand. Section 1691 governs rescission procedure. It requires that a party give notice of his or her intent to rescind and restore everything of value

received.  Lee frames his state law rescission claim as "alternative to, and in addition to" his claim for rescission under TILA.  He reiterates that he properly notified U.S. Bank when he exercised his intent to rescind and explains that he is "willing and able to tender upon the judgment of the court . . . ."  (Compl. ¶ 47.)  As California Civil Code section 1693 further notes:

> A party who has received benefits by reason of a contract that is subject to rescission and who in an action or proceeding seeks relief based upon rescission shall not be denied relief because of a delay in restoring or in tendering restoration of such benefits before judgment unless such delay has been substantially prejudicial to the other party; but the court may make a tender of restoration a condition of its judgment.

As it argued with respect to Lee's claim for rescission pursuant to TILA, U.S. Bank insists that Lee must not merely aver an ability to tender but also prove one.  Lee disagrees.  He claims he has convertible assets and the real ability to borrow sufficient amounts to make up any deficiency.  This, he insists, is enough to survive a pleading motion.  As the plain language of section 1694 indicates, a party certainly does not have to tender prior to a judgment where this delay would not prejudice the other party.  It follows, then, that a party's allegation of ability to tender must be sufficient to survive a motion to dismiss.

For additional support, Lee also points to a California Supreme Court opinion, *Backus v. Sessions*.  17 Cal. 2d 380 (1941).  There, a patient was involved in a fairly serious automobile accident.  Following the accident, he was dazed and semiconscious but nonetheless signed a general release of liability with the defendant's insurer in exchange for $800.  He later sought to rescind but could only aver access to $200 in cash.  He did, however, allege that he could borrow the remaining $800.  Although the plaintiff had access to other viable legal theories (mistake of fact among them), the court reasoned that his allegations were sufficient to state a claim for rescission: "But we cannot say that when plaintiff had assets convertible in cash of the value of $200 and had sufficient credit and was able and willing to borrow $600, he was unable or unwilling to restore the $800 to defendants."  *Id.* at 389-90.  The reasoning applies here: although Lee must ultimately satisfy the tender requirement to recover under this claim, his good faith averment that he is willing and able to

No. C 10-1434 RS
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

10

do so is sufficient at the pleading stage.  U.S. Bank's motion to dismiss his section 1691 claim must therefore be denied.

### C. Declaratory Relief, Action to Quiet Title, Injunctive Relief

Next, defendants move to dismiss Lee's claims for declaratory relief, to quiet title, and for injunctive relief.  Lee argues he exercised his right to rescind, and accordingly, insists U.S. Bank cannot legally proceed with the foreclosure sale.  These three claims all essentially seek to stay foreclosure.  U.S. Bank, in contrast, posits that because Lee has not yet tendered or proven his ability to do so, his "right" to rescission under TILA is illusory.  Accordingly, that entity reasons that Lee will never be able to prove his rightful ownership of the property and these claims are all doomed to fail.  U.S. Bank's rationale assumes Lee must do more than allege his ability to tender.  As explained in the foregoing section, Lee need not *prove* he can tender to survive a motion to dismiss.  Accordingly, defendants' motion to dismiss these causes of action must also be denied.

### D. California's Unfair Competition Law

U.S. Bank argues Lee's allegation of unfair business practices in violation of California Civil Code section 17200 is preempted by federal law and, accordingly, should be dismissed with prejudice.[2]  Defendants point to an Office of Thrift Supervision regulation that purports to occupy thoroughly the regulatory field affecting federal lending institutions.  U.S. Bank is such an entity.

Pursuant to the Supremacy Clause of Article VI, clause 2, of the United States Constitution, federal law preempts state law "when federal regulation in a particular field is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Bank of America v. City and County of San Francisco*, 309 F.3d 551, 558 (9th Cir. 2002).  In the banking field, Congress has created "an extensive federal statutory and regulatory scheme." *Id.*  As part of this scheme, Congress enacted the Home Owners Loan Act ("HOLA") and delegated authority to implement it to the Office of Thrift Supervision ("OTS").  The relevant regulation is 12 C.F.R. §

---

[2] California's unfair competition law ("UCL") prohibits acts or practices that are (1) fraudulent, (2) unlawful, or (3) unfair.  Cal. Bus. & Prof. Code § 17200.  Each prong of the UCL constitutes a separate and distinct theory of liability. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

No. C 10-1434 RS
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

11

560.2, which states that OTS "completely occupies the field of lending regulation for federal savings associations." The Ninth Circuit has characterized HOLA and its accompanying agency regulations as a "radical and comprehensive response to the inadequacies of the existing state system, and so pervasive as to leave no room for state regulatory control." *Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001, 1006 (9th Cir. 2008) (internal quotation marks omitted).

When reviewing the preemptive effect of the OTS regulation on a state law that seeks to regulate a federal bank, the Ninth Circuit has cited with approval the following instructions from the agency:

> [T]he first step will be to determine whether the type of law in question is listed in paragraph (b) [of 12 C.F.R. § 560.2]. If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

*Id.* at 1004. Paragraph (b) includes a lengthy list of specific types of state regulations that are properly preempted. Some of these include:

> [S]tate laws purporting to impose requirements regarding . . . [d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants. . . . [and those that impose requirements regarding] [p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.

12 C.F.R. § 560.2(b)(9)-(10). Finally, Section 560.2(c) provides that state laws of general applicability only incidentally affecting federal savings associations are not preempted so long as they serve vital state interests.

Lee relies on Section 17200 to advance an unfair business practice argument. He highlights three possible theories by which U.S. Bank's (or, more correctly, its predecessor, Downey Savings') alleged conduct comprised an unfair business practice. Lee contends U.S. Bank: (1) induced him to

No. C 10-1434 RS
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

12

"sign loan documents by concealing and misrepresenting" the loan's true terms; (2) determined he was qualified to take out a loan he could not afford "where it was reasonably foreseeable that [Lee] would incur bankruptcy or go into default"; and/or (3) provided him with inaccurate and misleading TILA disclosures.

Insofar as the Section 17200 claim is predicated on the alleged TILA disclosure violation, it is preempted. *See Silvas*, 514 F.3d at 1006 (finding HOLA preempted UCL claim where it was predicated on a TILA disclosure violation). The disclosures TILA requires are clearly contemplated in paragraph (b) of the OTS regulation. Lee's claim that U.S. Bank unfairly "concealed and misrepresented" the loan's terms, also falls within paragraph (b)'s description of a state law that, as applied, seeks to regulate directly either the required disclosures or loan advertisements of a federal bank. The only facts Lee alleges in support of this theory relate to the misstated finance charge and the improperly transcribed closing dates. Not only does Lee's more general theory exactly mimic his TILA claim, it unavoidably steps into the ambit of paragraph (b). Again, insofar as Lee relies on UCL to require specific disclosures, his claim is preempted by the OTS regulation.

Paragraph (b), in contrast, does not specifically address Lee's second theory, that it was an unfair business to deem someone with Lee's finances "qualified" for the loan he received. Accordingly, the next appropriate consideration is whether UCL, as Lee seeks to implement it, would "affect" U.S. Bank's lending practices. It would. Lee essentially argues it is an unfair business practice to loan money to financially at-risk individuals. Without commenting on the logic of his assertion, Lee seeks to limit U.S. Bank's lending practices or to at least impose more heady due diligence requirements. The claim is presumptively preempted; the presumption is reversed only where the law "clearly" fits within paragraph (c). The types of state laws contemplated there must have only an incidental effect on lending practices. Any doubt, moreover, must be resolved in favor of preemption. Here, Lee's suggested application of UCL law has more than an "incidental" effect: Lee suggests U.S. Bank cannot engage in risky lending endeavors, even where the borrower represents his ability to repay the loan. Accordingly, a fair reading of the OTS regulation and its

No. C 10-1434 RS
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

accompanying regulation indicate that Lee's suggested application of UCL is, under these facts and Lee's pleadings, preempted by federal law.

### E. California Civil Code Section 2924f

Defendants moves to dismiss with prejudice Lee's wrongful foreclosure claim. As an initial matter, it is not entirely clear from the Complaint which defendant was responsible for the foreclosure notice at issue here. Lee merely states that "[d]efendants caused to be recorded a Notice of Default . . . ." (Compl. ¶ 18.) This failure itself poses something of a notice pleading problem and supports dismissal of the claim.

Even assuming Lee had identified the defendant against whom he levies this claim, there is another threshold problem. Lee contends that the relevant section requires a notice of foreclosure sale to contain the "name and address of the beneficiary at whose request the sale is to be conducted." Cal. Civ. Code § 2924f(b)(1). U.S. Bank's failure to include its own address in the notice of foreclosure sale, Lee argues, operates as a violation of the section. In fact, the statute only requires inclusion of the beneficiary's address where the property to be sold has no street address or common designation. The purpose of the beneficiary's address is so that buyers may obtain written directions to the property directly from the beneficiary. Here, the Parkgrove property clearly has a street address and, for that matter, Lee does not even claim it was inaccurately listed on the notice. Because Lee has not advanced any section 2924f violation, he has not stated a viable claim for relief. The claim must be dismissed with leave to amend.

### F. Fraud, Concealment, Misrepresentation

U.S. Bank moves to dismiss Lee's fraud, concealment and misrepresentation claim for failure to comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). That pleading rule requires "specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG, LLP*, 476 F.3d 756, 764 (9th Cir. 2007). In California, the elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5)

No. C 10-1434 RS
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004). To support his theory of fraud, Lee reiterates the acts he contends constituted TILA violations and adds that U.S. Bank "misrepresented" that Lee "qualified for a loan that he could not truly afford." (Compl. ¶ 22.)

Turning first to the misstated dates and inaccurate estimates of fees, Lee has with adequate particularity identified the precise misrepresentations (the finance charge and the closing dates) as well as the party who made them (U.S. Bank in its final TILA disclosure). What Lee has not done is adequately plead justifiable reliance. As pleaded, it is simply not plausible that a borrower would abstain from entering into a loan if the finance charge were reduced by roughly $500 and the three-day rescission cut-off were altered by one day. If anything, the correction of these two misstatements would seem to make for a more enviable loan.

As to the income qualification charge, Lee does not adequately allege the "times, dates, places, benefits received, [or] other details of the alleged fraudulent activity" as required by Rule 9(b). *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). While Lee's allegations seem targeted at U.S. Bank and the loan consummation period, they address fraudulent acts that extended from February 2007 to the present. It is not even clear, then, *when* the alleged fraud took place. The Ninth Circuit recognizes a general exception to the Rule's heightened requirements where "the facts constituting the circumstances of the alleged fraud are peculiarly within the defendant's knowledge or are readily obtainable by him." *Id.* The exception does not, of course, "nullify" the Rule: a plaintiff who makes allegations on information and belief must state the factual basis for the belief. *Id.* Despite Lee's arguments to the contrary, the exception is not appropriate here. Lee had access to his own financial history and was obviously the party best-equipped to predict his financial future. Moreover, he is also charged with reading the loan's terms and his own obligation under it. The misstated signature dates and the overstated finance charge cannot conceivably interfere with his ability to understand his monthly obligation. Defendants' motion to dismiss Lee's fraud claim must be granted with leave to amend.

G. <u>Unjust Enrichment</u>

Lee describes his fifth claim as one for "unjust enrichment." Courts in this state and district diverge on whether unjust enrichment functions as an independent claim or is instead an effect that must be tethered to a distinct legal theory to warrant relief. Some courts have read a plaintiff's "claim" for unjust enrichment as a claim for relief. *See, e.g.*, *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 50 (1996) (recognizing that a plaintiff may advance a stand-alone claim for unjust enrichment, particularly where he or she seeks restitution and other remedies are inadequate). These courts focus on whether the facts demonstrate a defendant's unjust receipt of some benefit. Other courts cast unjust enrichment as an *effect*: it is simply the thing that needs remedying. This view differs chiefly in that it does not perceive unjust enrichment to be a claim for relief at all. It is instead an effect that must be tethered to a distinct legal theory or plea for relief, like an action premised on quasi-contract theory. *See McKell v. Wash. Mut., Inc.*, 412 Cal. App. 4th 1457, 1489 (2006); *Melchior v. New Line Prod., Inc.*, 106 Cal. App. 4th 779, 793 (2003) ("The phrase 'unjust enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so.").

Under both views, the effect of unjust enrichment is remedied with some form of restitution. *See, e.g.*, *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 684 (9th Cir. 2009) ("Unjust enrichment is commonly understood as a theory upon which the remedy of restitution may be granted."); Restatement of Restitution § 1 (1936) ("A person who has been unjustly enriched at the expense of another is required to make restitution to the other."). A plaintiff advances a basis for obtaining restitution if he or she demonstrates defendant's receipt and unjust retention of a benefit. *See Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726, 91 (2000); *First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1662-63 (1992). "The fact that one person benefits another is not, by itself, sufficient to require restitution." *McBride v. Boughton*, 123 Cal. App. 4th 379, 389 (2004) (*quoting First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1662 (1992)). Instead, "[t]he person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is unjust for the person to retain it." *Id.* (internal quotation marks and citations omitted).

No. C 10-1434 RS
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

16

The benefit of the narrower view is that it effectively delineates precisely what unjust enrichment means and how it works.  There are several factual scenarios where a theory of unjust enrichment has historically supported restitution as a remedy.  A plaintiff may, for example, advance a claim as an alternative to breach of contract when the parties have a contract that was procured by fraud or is for some reason unenforceable.  *See McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004).  Or, where the plaintiff cannot assert title or right to possession of particular property, but nevertheless can show just grounds for recovering money to pay for some benefit the defendant received from him, "the plaintiff has a right to restitution at law through an action derived from the common-law writ of assumpsit" (this method implies a contract at law, or a quasi-contract).  *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) ("Such claims were [historically] viewed essentially as actions at law for breach of contract (whether the contract was actual or implied).").  Finally, a plaintiff may seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property "identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.*

In his opposition papers, Lee asks that this Court refashion his unjust enrichment claim into a request for restitution.  Lee contends U.S. Bank was "unjustly enriched" each time Lee made his monthly mortgage payment.  He argues he has a valid right to rescind under TILA because U.S. Bank made at least two disclosure failures (detailed above) and therefore asks that U.S. Bank return all of Lee's mortgage payments.  This is a rather nonsensical argument.  U.S. Bank had a contractual entitlement to those payments.  Moreover, after Lee *exercised* his rescission right, he certainly made no further payments.  Not only has Lee not tethered the effect of the alleged unjust enrichment to a cognizable legal theory, he has also failed to show how the enrichment was remotely unjust.  Accordingly, this claim is dismissed with leave to amend.

H. Accounting

Defendants contend Lee has not adequately pleaded a viable claim for an accounting.  An action for an accounting, which is equitable in nature, may be brought to require a defendant to

No. C 10-1434 RS
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

17

account to a plaintiff for money or property: (1) where a fiduciary relationship exists between the parties, or (2) where, though no fiduciary relationship exists, the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable. *Civic W. Corp. v. Zila Indus.*, 66 Cal. App. 3d 1 (1977). Lee has not actually pleaded the existence of a fiduciary relationship nor has he presented any facts that would lend credence to the notion that the amount at issue is complicated. Accordingly, defendants' motion is granted with leave to amend.

## V. CONCLUSION

Defendants' motion to dismiss Lee's claims for rescission under TILA or California Civil Code section 1691, for injunctive relief, to quiet title, and for declaratory relief must be denied. The motion to dismiss Lee's UCL allegations, his wrongful foreclosure claim, all claims related to fraud to unjust enrichment and to an accounting are granted. With the exception of his UCL and section 2924f claims, Lee may amend his Complaint. He must do so on or before August 19, 2010. A Case Management Conference shall be held on October 14, 2010 at 10:00 a.m. in Courtroom 3 on the 17th Floor of the United States Courthouse in San Francisco. The parties shall file a Joint Case Management Conference one week prior to the Conference.

IT IS SO ORDERED.

Dated: 06/30/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

No. C 10-1434 RS
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

18